NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COM-
PANY *et al. v.* J. B. LILLIE.

*(Nashville.   December Term, 1903.)*

1. **COMMON CARRIERS.   Are insurers of passenger's baggage,
   except against the act of God, the public enemy, or himself.**
   It is well settled that, in the carriage of a passenger's baggage,
   the carrier assumes the full responsibility of a common carrier
   of goods, and becomes an insurer of its safety against any acci-
   dent which is not caused by the act of God, the public enemy,
   or the fault of the owner or the passenger himself. (*Post,*
   *p.* 339.)

2. **SAME.   Not insurers of the baggage carried by passengers in
   day coaches.**
   A railroad company is not liable as an insurer of the safety of the
   baggage, hand luggage, grips, and parcels carried by passengers
   in day coaches, and kept in their control and custody during
   the entire trip.   (*Post, pp.* 340-341.)

3. **SAME.   Employees of sleeping car company are employees of
   the railroad company.**
   The employees of the sleeping car company are the employees of
   the railroad company, and the railroad company is responsible
   for the conduct of the sleeping car company's employees.(*Post,*
   *p.* 341.)

   Cases cited and approved; Railroad v. Ray, 101 Tenn., 10; Mann
   Boudoir Car Co. v. Dupre, 21 L. R. A., 289, note.

4. **SAME.   Same.   Railroad is insurer of a passenger's baggage
   deposited in sleeping car, when.**
   Where a passenger carries his suit case or valise into a sleeping
   car, and deposits it by or about the seat of the berth to be occu-

pied by him, and afterwards, on retiring, places it under his berth without assuming and retaining the exclusive possession and control thereof, and not directly or impliedly denying any right of possession or custody to the employees of the railroad company, such baggage must be considered as in the custody of the employees of the sleeping car company, who are at the same time employees of the railroad company, and the railroad company must be treated as insuring its safety. (*Post, pp.* 342-344.)

Cases cited and approved: Railroad v. Katzenberger, 16 Lea, 380; Pullman Palace Car Company v. Cavin, 93 Tenn., 53; Railroad v. Ray, 101 Tenn., 10; Railroad v. Roy, 102 U. S. 451; Thorpe v. Railroad, 76 N. Y., 406; Dwinelle v. Railroad, 120 N. Y., 117.

5. **SAME. Same. Same.** Railroad company is liable for loss of passenger's baggage in sleeping car without explanation—res ipsa loquitur.

Where there is a loss of the baggage of a passenger in a sleeping car, and no explanation can be given, the loss must have occurred through neglect or theft. *Res ipsa loquitur.* And without negligence shown or inferred, the railroad company is the insurer of the baggage, and responsible for its loss. (*Post, p.* 344.)

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County.— JOHN W. CHILDRESS, Judge.

VERTREES & VERTREES, for Illinois Central Railroad Company.

CLAUDE WALLER, SLEMONS & BARTHELL, for Nashville, Chattanooga & St. Louis Railway Company.

JOHN C. NOLEN, for Lillie.

MR. JUSTICE WILKES delivered the opinion of the Court.

This suit was commenced before a justice of the peace. On appeal it was tried before the judge of the lower court, sitting without the intervention of a jury. There was a judgment for $73 in favor of the plaintiff against the defendants, from which the defendants have appealed. The case involves the liability of a railroad company for the loss of the suit case of a passenger on a sleeping car.

A request was made of the court that he reduce to writing his findings of fact, which was done. It is as follows:

"This is a suit brought by the plaintiff against the Nashville, Chattanooga & St. Louis Railway and the Illinois Central Railroad for the loss of a dress-suit case, or valise, and its contents. A question was made in regard to the regularity of the proceeding, by which it was claimed that the Illinois Central Railroad was not properly before the court, but counsel for the Illinois Central Railroad Company, in open court, waived the question, and, for the purposes of the suit, conceded it was properly before the court; and therefore in these findings I

have considered the case as properly brought against both of the defendants.

"Full stenographic notes were taken of all the proof produced upon the trial, which is hereto attached, and, from said report of the evidence so filed, this court finds as follows:

"That on the night of January 18, 1902, the plaintiff took passage at St. Louis upon a train made up of several day coaches, and the usual sleeper of the Pullman Car Company, for Nashville. The train was composed of cars of the Illinois Central, of the Nashville, Chattanooga & St. Louis, and of the Pullman Car Campany, and the engine hauling it from St. Louis to Fulton, Ky., was the engine of the Illinois Central, and manned by the officers and crew of said railway. From Fulton, Ky., to Nashville, the engine was one of the Nashville, Chattanooga & St. Louis, and the officers and crew manning said engine and train from there to Nashville was of said company.

"That he (the plaintiff) entered the Nashville sleeper at the depot in St. Louis, and carried his own luggage with him into the car, where the same was put down by the seat of the berth to be occupied by him. That the luggage remained in that position until he came to retire, between twelve and one o'clock at night, when the plaintiff last remembered to have seen the dress-suit case in question, when he placed the case under his berth, in the space between the two seats constituting a section, the lower berth of which he occupied. That when near-

ing Nashville, the next morning, and shortly before arriving at the station, his attention was called by a fellow passenger to the fact of the loss of his grip, whereupon he made search for his own suit case, and failed to find it in his berth, or under the same, where he had placed it. He then called upon the porter of the sleeper, who, after search, failed to find the same. He then reported the fact to the Pullman Car Company conductor, and later to said company's head office, at Chicago.

"The court further finds that there was no actual possession given by the plaintiff of his suit case to either the porter or conductor of the sleeper, but it was carried by the plaintiff into the car, and set down, in the usual, ordinary way, by the berth or section he was to occupy.

"I further find that, as is usual, there was one car in this train, known as the baggage car, in which is carried the baggage of any and all passengers who desire it to be carried therein. Said car was in charge of an agent or employee of the defendant railroad companies, who assumed to take entire control and custody of all baggage to be carried in the baggage car, and to deliver the same at its destination upon the surrender of the check therefor given to the passenger when desiring his baggage to be carried in that car, which facts were known to the plaintiff before and at the time he boarded the train in St. Louis for Nashville.

"The court further finds from the proof that it was the custom, and, as a fact was the case on the night in question, that the rear door of the sleeper was locked

from the outside, while standing in the depot, and that
the front door of the sleeper was open to permit passen-
gers to enter it at St. Louis; that the conductor of said
car was up and awake until three or four o'clock in the
morning; and that the porter was awake and on duty
(watch) the whole night, or from the time the train left
St. Louis until it arrived at Nashville. There were three
sleepers in the train on the night in question, there was
a porter on each sleeper, and each porter could pass
through to each sleeper.

"I further find that the sleeping car in which the plain
tiff rode was owned by a corporation known as the Pull-
man Palace Car Company, which company employs and
discharges its own employees and operators. It is en-
gaged in the business of furnishing sleeping accommoda-
tions to such passengers as pay the usual and customary
charges therefor; and that the plaintiff paid to said com-
pany the usual charge therefor, and procured from it a
ticket entitling him to ride in said car, and to occupy a
berth therein, from St. Louis to Nashville.

"I further find that by contract between the defendant
railroad companies and the Pullman Palace Car Com-
pany, the sleeper in which the plaintiff was riding was
drawn by the engines of the defendant railroad com-
panies, and constituted a part of the train running from
St. Louis to Nashville over the lines of road of the de-
fendant companies, and under the control of the train
conductor, the sleeping car being one of the cars that
made up the train; and, under the state of facts, the
court is to determine whether these defendant companies

Railroad v. Lillie.

are liable for the loss of this suit case and its contents, sued for by the plaintiff in this case. The court further finds that no passenger or other person came on board or left the car in question between St. Louis and Nashville on the night in question.

"The court further finds that the porter of the sleeper waked the plaintiff up on the morning in question.

"If it was an open question as to the liability of the defendant, under the authorities in this state, the court would be in grave doubt as to the defendant's liability; but, under the principles announced in the case of the *Railroad* v. *Katzenberger,* reported in 16 Lea, 380, 1 S. W., 44, 57 Am. Rep., 232, the court is of the opinion, and so holds, that the railroad companies are liable for the loss of suit case and its contents, and therefore renders judgment against the defendant companies for the valise as shown by the testimony of plaintiff, or the valise and its contents ($69.50), and interest thereon since January 30, 1902, to this date, of $3.50, making a total of $73."

It will be observed that the trial judge does not find how the case was lost.

It is assigned as error that there is no evidence to support the finding of the trial judge, and that his finding of facts does not show any liability upon the part of the railroad company.

It is claimed that there is a marked distinction between the present case and the case of *Railroad* v. *Kat-*

Railroad v. Lillie.

*zenberger,* 16 Lea, 380, 1 S. W., 44, 57 Am. Rep., 232,
which the trial judge was of opinion was conclusive of
the controversy in the present case.    These distinctions
are thus pointed out:    That in the present case the de-
fendant roads provided a special car, known as a bag-
gage car, in which the plaintiff might have deposited his
luggage, received a check for the same, and had it carried.
at the risk of the railroads, without any additional cost
to him; that the railroad companies had agents or em-
ployees in charge of such cars, intrusted with the special
duty of looking after the baggage of passengers, and
charged with the duty of safely delivering it at the point
of destination upon surrender of the check given there-
for; that the plaintiff knew of these facts when he pur-
chased his ticket and when he boarded the train; and
that none of these facts appear in the Katzenberger case.
It is further stated that the plaintiff in this case did not
give the custody of his valise to any employee of the
railroad company, nor to any agent or employee of the
sleeping car company; that he made no offer to so deliver
it, but kept the entire control of his valise himself, and
continued to keep it throughout the entire time he was
a passenger; that in the Katzenberger case the court
found that there had been a delivery of the valise to the
train porter, who assumed to take control of it, and car-
ried it into the car, and placed it upon a seat by the side
of the conductor, near the middle of the car; that in the
Katzenberger case the main ground of defense was that
the railroad company was entitled to the benefit of limi-

tations upon the ticket of the sleeping car company, and that these limitations and conditions inured to the benefit of the railroad company.

These distinctions appear to exist, and the real question in the present case is whether they are material to the merits of the present controversy.

It is well settled that, in the carriage of a passenger's baggage, the carrier assumes the full responsibility of a common carrier of goods, and becomes an insurer of its safety against any accident which is not the act of God or of the public enemy, or the fault of the owner or passenger himself.   Hutchinson on Carriers, section 678.

The real contention in this case is that plaintiff's baggage was not put into the custody and control of any agent or employee of the railroad company, nor even into the custody and control of any agent or employee of the sleeping car company, but was retained by the plaintiff in his own custody, possession, and control; and it is said that the liability of the carrier depends upon whether the passenger has given over the custody and care of his luggage to the control of the carrier, and into his possession, or keeps the entire control over it himself.   In the former case, it is said, there may be a liability; in the latter case, there cannot be.   Citing Hutchinson on Carriers, section 593.

Mr. Thompson, in his work on Negligence, says: "The idea that lies at the foundation of the extraordinary liability of the carrier is that the baggage is in his custody and under his control during the transportation. Hence,

in order to hold him responsible if it is lost, it is material to show that it came into his possession." Thompson on Negligence, vol. 3, section 3428.

Ray, in his work on Imposed Duties of Carriers of Passengers, says that there must be delivery of the baggage to the carrier, before it can ever be held responsible, under any circumstances, for its loss.   Section 155.

Van Zile on Bailments and Carriers, section 681, says: "It may be said generally that, for baggage of a passenger that is under the exclusive control of the carrier, the liability of a carrier is that of an insurer."

In section 682 he says:   "With regard to the liability of hand baggage, the question of the duty and liability of the carrier seems to depend upon who has the custody or control of the baggage.   If the passenger has the entire control and custody of the baggage, to the exclusion of the carrier—if, as has been said, there exists the *animo custodiendi* upon the part of the passenger to the exclusion of the carrier—then the carrier cannot be held as an insurer, as in the case of baggage in the entire control and custody of the carrier, and will not be liable at all, unless guilty of negligence which results in its loss or damage in the absence of contributory negligence on the part of the passenger."   See, also, Ray on Imposed Duties, sections 558, 559.

We think that in the case of passengers on day coaches who prefer to keep their baggage, and especially their hand luggage in their own possession, and on the seat with them in the day coach, instead of placing it in the

baggage car, the railroad company should not be held liable as an insurer.

There are large numbers of day passengers, and they almost invariably carry hand grips and parcels in their hands, retaining control and custody of them during the entire trip. In such a case the carrier should not be held as an insurer of the safety of the baggage. But does the same rule apply in regard to the baggage of passengers riding in sleeping cars? These passengers, as a general rule, are going journeys which require, it may be, days and nights to accomplish. They desire superior accommodations and conveniences, and, among them to be relieved from the care and custody of their luggage except so far as they may desire to use it for their daily purposes.

It has been held that the employees of the sleeping car company are the employees of the railroad company and the railroad company is responsible for the conduct of the sleeping car's employees. *Railroad* v. *Ray,* 101 Tenn., 10, 46 S. W., 554, and cases there cited; *Mann Boudoir Car Co.* v. *Dupre,* 21 L. R. A., 289, note.

The contention we have is not between the railroad company and the sleeping car company, nor between the sleeping car company and the passenger, but between the railroad company and its passenger riding in the sleeping car. The question is not one bearing upon the safety of the passenger, but upon the liability of the railroad company for his luggage; and we are of opinion that this case turns upon the question whether or

not the luggage must, under the findings of the trial
judge, be considered as retained in the exclusive custody
of the passenger, or as under the control and in the cus-
tody of the employees of the sleeping car company, who
are also, under the law, employees of the railroad com-
pany, as to the custody and safety of luggage.

We think it does not matter who brings the luggage
upon the car—whether the passenger or the porter—
nor is it very material where in the car the luggage is
deposited after it is brought in.  Unless the passenger
shall assume and retain the exclusive possession and
control of the baggage, and either directly or impliedly
deny any right of possession or custody to the employees
of the road, the baggage must be considered as being in
the possession of the employees of the sleeping car com-
pany, who are at the same time employees of the railroad
company.  Especially is this true of luggage and hand
baggage that the passenger does not keep about his per-
son or in his hand, nor take with him when he retires
to his berth.  If the baggage is deposited under the berth,
or over it, or at any other convenient place, when the
passenger retires for sleep, it must be considered as in
the custody of the employees of the road, and the rail-
road company must be treated as insuring its safety.

The contract to carry is with the railroad company,
and not with the sleeping car company, and the sleeping
car company is not a common carrier in the sense that
the railroad company is, nor is the sleeping car company
responsible as an innkeeper; but the railroad company

is liable for the negligent acts of its servants.   The porter of a sleeping car is a servant of the railroad company.  *Pennsylvania R. Co.* v. *Roy,* 102 U. S., 451, 26 L. Ed., 141; *Thorpe* v. *N. Y. Central & Hudson R. R. Co.,* 76 N. Y., 406, 32 Am. Rep., 325; *Dwinelle* v. *N. Y. C. & H. R. R. Co.,* 120 N. Y., 117, 24 N. E., 319, 8 L. R. A., 224, 17 Am. St. Rep., 611; *Pullman Palace Car Co.* v. *Cavin,* 93 Tenn., 53, 23 S. W., 70, 21 L. R. A., 298, 42 Am. St. Rep., 902; *Railroad* v. *Ray,* 101 Tenn., 10, 46 S. W., 554.

We are not able to distinguish the case at bar, in principle from the case of *R. Co.* v. *Katzenberger,* 16 Lea, 380, 1 S. W., 44, 57 Am. Rep., 232.

It is said that there is no statement in the opinion of the court in the Katzenberger case that there was a baggage car attached to the train. But it is a matter of common information that all passenger trains carry baggage cars, and the failure to mention one in that case was either an omission, or considered unimportant.

We think that the facts in the Katzenberger case show that the baggage was in the custody of the employees of the road, and the same fact appears in this case.

In the former case the court says: "There appears no special custody of the baggage in this case, more than the fact of taking it into the Pullman car and delivering it to the porter, who placed it on a seat opposite the owner."

In each case the facts constitute a delivery to the railroad, and not an exclusive custody by the plaintiff. The article lost, being a suit case, was not easily suscep-

Railroad v. Lillie.

tible of exclusive custody by the passenger, as might be the case with a small hand grip; and the facts show that it was put in the usual place, under the berth, when the passenger retired for sleep.

It is shown that other passengers were on the train. Some of them may have inadvertently or purposely taken the luggage.

Three parties had access to the train and there was an opportunity for the baggage to be taken. That it was taken and lost or destroyed must, under the findings, be conceded. No explanation can be given. There could have beeen no loss except through negligence or theft. *Res ipsa loquitur.*

But even if no negligence is shown or can be inferred, the railroad company, under the facts and the law, must be held an insurer of the baggage, and responsible for its loss.

The judgment of the court below is affirmed, with costs.