HENRY T. NELSON v. ILLINOIS CENTRAL RAILROAD COMPANY.

[53 South. 619.]

1. RAILROADS. *Passengers. Sleeping cars. Negligence of servant of sleeping car company. Liability of carrier.*

Agents and servants of a sleeping car company on its cars, which are attached to and become part of the system of transportation used by a railroad company, are agents of the railroad company; and if a passenger on such a car is injured by the negligence of servants of the sleeping car company, the railroad company is liable in the same way and to the same extent as if the injury had occurred on its ordinary passenger coaches.

2. SAME. *Loss of baggage.*

A railroad company, using cars of a sleeping car company on its trains to carry out its contracts of transportation, is liable for the

loss, by negligence of servants of the sleeping car company, of hand baggage of a passenger carried with him on such a car under a contract with the sleeping car company, although that company may also be liable therefor; the same duty to protect the person and baggage of the passenger resting on both companies under their separate contracts, and their negligent failure to perform duty resulting in a single indivisible injury, making them joint tortfeasors.

3. TORTS. *Joint tortfeasors.*

Where two or more persons owe a common duty to another, they are jointly and severally liable for injuries caused to such other by a common neglect of such duty.

4. SAME. *Joint and several liability.*

When the negligence of two or more persons concurs in producing a single indivisible injury, such persons are jointly and severally liable, although there was no common duty, common design, or concert of action.

5. RES ADJUDICATA. *Judgment. Conclusiveness. Judgment in favor of joint tortfeasor.*

Judgments conclude only parties and privies, and there is no such privity between joint tortfeasors as to permit a judgment in favor of one of them for the injury to be pleaded as a bar to an action against the other; so that a judgment in favor of a sleeping car company, in an action against it by a passenger for loss of baggage in the sleeping car, does not bar a subsequent action against the railroad company for the same loss for which both companies were jointly and severally liable.

FROM the circuit court of first district, Hinds county. HON. WILLIAM A. HENRY, Judge.

Nelson, appellee, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment in favor of defendant the plaintiff appealed to the supreme court. The opinion of the court states the facts of the case.

*Watkins & Watkins,* for appellant.

The question of *res adjudicata* presented by the appellee's first plea has been settled by this court in *Illinois,*

*etc. R. R. Co.* v. *Clark,* 85 Miss. 691. In this case, the plaintiff in the court below sued the Illinois Central Railroad Company for personal injuries, and joined as defendant its employe who was directly guilty of the negligence complained of. Judgment was rendered against the railroad company but not against the employe; and on appeal the railroad company contended that the adjudged acquittal of the employe released the company. This court, however, decided that the two defendants were jointly liable, if liable at all, and that the plaintiff could have sued the defendants jointly or either of them separately, and because an unjust or erroneous judgment was entered in favor of one joint defendant was no reason for holding the other not liable.

A similar question is involved in this case. It is claimed by the railroad company that if it were liable at all it was only liable because of the wrongdoing of the Pullman Company's agents and servants, and that a judgment in favor of the Pullman Company negatived any liability whatever on its part, to which we reply that both companies were jointly liable; the appellant could have sued them jointly or separately, and because through lack of preparation of the case or some error of the trial court, or the uncertainty of the jury, a verdict has been rendered in another court in favor of one of the defendants, does not in any manner lessen the liability of the other defendant who is equally liable.

The defense set up by appellee in its second plea is equally unsound. In that plea it assumes the position that the appellant's loss was not occasioned by its servants but was caused solely and only by the employes of the Pullman Company in whose charge and custody he voluntarily placed the custody and control of his baggage. The relation of the Pullman Company to the Illinois Central Railroad Company and other carriers in this country has been a matter of such frequent inquiry on the part of the courts that it may safely be assumed

that courts take judicial notice of the existence of the separate cars of the Pullman Company on every trunk line which operates in this country. It is general knowledge that the Pullman Company sleeping cars are attached to and form part of the regular passenger trains on all of the principal railroads in this country, by some secret agreement between the Pullman Company and the railroad companies. The details of such agreement in this case are unnecessary, since this court can safely assume that such arrangement is made for the mutual interest and benefit of the two companies as well as for the convenience and comfort of the traveling public. The question as to the liability of the railroad company for the acts and conduct of the Pullman Company's employes is a question of first impression in this state. It has received, however, numerous adjudications by the supreme courts of other states.

The leading case upon the question and the one most frequently cited is that of *Railroad Company* v. *Roy,* 102 U. S. 451, 26 Law Ed. 141, wherein it was held that, in a suit against the railroad company by a passenger of both companies, who occupied a Pullman Company car, the agents and servants of the Pullman Company were as to all matters which affected the passenger the agents and servants of the railroad company; in other words, that the railroad company was liable for the acts of the agents of the Pullman Company, just as it would be for its own employes in reference to all matters concerning the passenger. See 2 Kent Com. 600, 12th Ed.; 2 Parsons Cont. 218, 219, 16th Ed.; Story Bailments, §§ 601, 601a, 602; Cooley, Torts, 642; Wharton Negligence, 2nd Ed., § 627; Chit. Carriers, 256; *Thrope* v. *Railway Co.,* 32 Am. Rep. 325; *Airey* v. *Railway Co.,* 23 South. 512; *Williams* v. *Pullman Co.,* 4 South. 85; *Railway Co.* v. *Asthorn,* 51 Am. St. Rep. 303; *Railway Co.* v. *Ray,* 101 Tenn. 1; *Kinsley* v. *Railway Co.,* 28 Am. Rep. 200; *Rail-*

*way Co.* v. *Kattsenberger,* 16 Lea (Tenn.) 380; *Carpenter* v. *Railway Co.,* 26 N. E. 277.

*Mayes & Longstreet,* for appellee.

The gravamen of the action against appellee is that, notwithstanding the appellant had purchased a sleeping car ticket, and had entered the sleeping car of the Pullman Company, and delivered his suit case to the porter or conductor in charge of the car, yet, still the Illinois Central Railroad Company, by reason of the fact that it had sold him an ordinary fare ticket from Memphis to Durant, under the general obligations imposed upon carriers, became liable to account to appellant for his suit case and contents, on the theory that the Pullman car conductor and porter were agents of the Illinois Central Railroad Company.

In defense of the action, the appellee railroad company pleaded specifically first, that the appellant, Nelson, had, prior to the institution of this suit against the railroad company, begun a suit in a court of competent jurisdiction in the state of Tennessee, against the Pullman Company, in order to establish liability on that company for the loss of his property. That the cause was tried in the justice court on its merits, and a judgment entered adversely to appellant, from which he appealed to the circuit court of Shelby county, Tennessee, where, on a further trial on the merits, another judgment against him was entered, and the appellee averred that on this account, the issue was *res adjudicata* against appellant.

The appellee railroad company further pleaded that the appellant, Nelson, entrusted himself specially to the care of the Pullman Car Company, and placed his baggage in the care and custody of the Pullman Company; that the appellant never entered any of the ordinary coaches of the appellee railroad company; and that none of the direct employes of the railroad company were

even aware of the existence of the suit case, or of its presence on the train.

One or the other of the special pleas of appellee must be substantial and a complete answer to the suit. If the plea of *res adjudicata* is sustained by this court, then it is an end to the controversy, and as there was no judgment final entered on that plea, the judgment of this court will in such event be final.

The only theory on which appellant may base hope that a liability may be established on the railroad company on account of the wrongful actions or the negligence of the Pullman Company's employes, is the sole theory in his declaration and referred to in the authorities cited by him, namely, that the Pullman Company's conductor and porter were the agents, servants and employes of the railroad company. In other words, unless it is admitted, for purpose of argument, that under the general obligations of a carrier, the defendant railroad company is responsible to the plaintiff, solely because the employes of the Pullman Company must be held to be the employes and servants of the railroad company, then it becomes apparent that the plea of *res adjudicata* is substantial and sufficient to bar recovery, because it sets up the fact that plaintiff has already one suit against these employes, servants and agents of the railroad·company, with judgment adverse to him in the suit.

In the leading case of *Pennsylvania, etc. Co.* v. *Roy,* 12 Otto 451, 26 Law Ed. U. S. Sup. Ct. Rep. 144, Mr. Justice Harlan said: ''The sleeping car company, its conductors, and porters, were in law, the servants and employes of the railroad company. Their negligence, or the negligence of either of them, as to any matters involving the safety or security of passengers while being conveyed, was the negligence of the railroad company.'' Therefore, when this appellant sued the Pullman Company, and the appellee here was in thorough privity with said company, and the defense that there was no negli-

gence by the Pullman Company is conclusive in this suit against the appellant.

If we concede that the only way by which liability could be brought home to the railroad company would be by holding the sleeping car company's conductor and porter to be in law the employes and servants of the railroad company, then another well established principle of law will come into operation, namely, that a judgment in a suit in which an agent or servant is a party prosecuting or defending under the authority and in the right of the principal or himself, is conclusive for or against the principal or himself, citing the following authorities: *Mining Co.* v. *Emma Silver Mining Co.,* 7 Fed. Rep. 401; *Moore* v. *Richardson,* 100 Ill. 134; *Fridges* v. *McAllister,* 106 Ky. 791; *McKenzie* v. *Balt,* 28 Md. 101; *Kingsley* v. *Davis,* 104 Mass. 178; *Lipman* v. *Campbell,* 40 Mo. App. 564.

The case of *Railroad Co.* v. *Clark,* 85 Miss. 697, cited by appellant, differs materially and essentially from the case at bar. In the case cited, the plaintiff made both the railroad company and the engineer of the train parties defendant, and did charge not only a joint and equal liability, but charged facts separately and distinctly against each which would have constituted, if sustained by the proof, different causes of action. It was a suit against both defendants and the liability was fastened on the railroad company on the idea that its general obligations to the public put on it a duty to the injured person without regard to the personal actions of the engineer who was averred in the declaration in that case, to have been willfully and wantonly negligent.

Then again, in the *Clark case, supra,* plaintiff properly joined in his action as co-defendants both the master and the servant and he recovered a valid judgment, in the judgment of this court, while Nelson, the appellant here, brought his independent action for damages against the Pullman Company in a court of competent jurisdic-

tion, and after two separate trials on the merits, had a judgment entered adverse to him. Therefore, the principle that no plaintiff shall split his actions and bring suit after suit on the same cause of action against principal and agent, or master and servant, or those in privity of relations, bars him against recovery.

Unquestionably in the case at bar, the railroad company can only be liable on the doctrine of *respondeat superior.*

If the plea of *res adjudicata* is not good, and if the Pullman Company is not to be held the agent, servant, and employe of the railroad company, then, if there was a separate and distinct liability on each, the second special plea would be good because the appellant did go into the Pullman sleeping car, did place his effects in the possession of the Pullman Company, and did pay a special price for special comforts, conveniences and privileges therein. The two special pleas are largely alternative. It is certain that one or the other is valid, and a complete answer to the demand of appellant.

MAYES, C. J., delivered the opinion of the court.

While traveling over the line of railway owned by the Illinois Central Railroad Company, H. T. Nelson claims to have lost a suit case and contents, through the negligence of the company, valued at two hundred and twenty-seven dollars, or thereabouts, and the object of this suit is to compel reimbursement by the company. The cause is here on the pleadings, and the case made is about as follows, viz.: Mr. Nelson alleges in his declaration that he procured transportation over the Illinois Central Railroad from Memphis, Tenn., to Durant, Miss. At the same time he purchased his railroad ticket, and from the same agent, Nelson alleges that he also purchased a sleeping car ticket entitling him to a berth on a sleeping car from Memphis to Durant; the sleeping car being attached to and being a part of the train. Nelson further alleges in his declara-

tion that he boarded the train at Memphis, bound for
Durant, at about 11:30 p. m., entered the sleeping car,
and was assigned to "lower No. 4 in a car named Saf-
fola." Nelson further alleges that he had with him a
suit case containing articles of necessary apparel for the
contemplated journey, and of the value, including the
suit case, of the sum stated above; that when he retired
he left the suit case and contents by the side of his berth,
and on reaching his destination it was discovered that
the case and contents were gone; and that because of the
negligence, willful conduct, or gross negligence on the
part of the company, etc., the case and its contents were
lost. The railroad company filed the general issue and
two special pleas. The first special plea was to the effect
that Nelson instituted a suit on the same cause of action
in the justice of the peace court in the state of Tennessee;
that this court had full and final jurisdiction, and that
the suit was instituted there in June, 1909, long prior to
the bringing of the suit then on trial; that the suit
brought in Tennessee was upon the identical cause of
action, was instituted against the Pullman Palace Car
Company, and resulted in a judgment against Nelson
and in favor of the Pullman Company; that afterwards
Nelson appealed the case from the judgment of the jus-
tice of the peace to the circuit court of the same county
in Tennessee, this appellate court having full jurisdic-
tion of the cause so appealed; and that court again ren-
dered a judgment against Nelson and in favor of the
Pullman Company. Wherefore it is claimed by this plea
that the cause is *res adjudicata* and should be dismissed.
The second special plea alleges that the suit should not
be maintained because, at the time his baggage is claimed
to have been lost or destroyed, Nelson was a general pas-
senger, traveling upon an ordinary ticket, and his loss
did not occur in an ordinary passenger coach of the rail-
road company, nor in the baggage car; that the suit case
was never placed in the care or custody of any employe

of the railroad company, and it did not have any notice, of the existence of the baggage; that Nelson went into a sleeping car of the Pullman Company, and paid to it a special consideration for additional accommodation and protection, and placed himself and his hand baggage specially in the custody and care of the employes of the Pullman Company; and that the baggage was then lost while plaintiff was in the care of the Pullman Company. To these two pleas a demurrer was interposed, the effect of which was to allege that neither of the pleas constituted any defense. The demurrers were overruled, and, Nelson declining to plead further, final judgment was taken, dismissing the declaration, from which judgment an appeal is prosecuted here.

It is our judgment that neither of the pleas offered by the railroad company presented any defense to the suit of Nelson, and the demurrer to both pleas should have been sustained. The agents and servants of the sleeping car company are undoubtedly the agents of the railroad company. The cars of the sleeping car company are attached to and become a part of the system of transportation used by the railroad company in carrying out its contracts of transportation. When a passenger is injured by any neglect on the part of the sleeping car company, and while a passenger on same, the railroad company is liable in the same way and to the same extent as it would be if the injury had occurred on one of its ordinary passenger coaches. As is said in the case of *Railroad Co.* v. *Roy,* 102 U. S. 451, 26 L. Ed. 141: "The law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company, whose cars are used by and constitute a part of the train of the railroad company, to throw off the duty of providing proper means for the same conveyance of those whom it has agreed to convey. 2 Kent, Com. (12th Ed.), 600; 2 Pars. Cont. (6th Ed.), 218, 219; Story, Bailments, §§

601, 601a, 602; Cooley, Torts, 642; Wharton, Negl. (2d Ed.), § 627 *et seq.;* Chit. Carriers, 256 *et seq.;* and cases cited by the authors." Because the railroad company adopts the sleeping car as a part of its train, uses it to carry out its contracts of transportation, and invites its passengers to go into and avail of its comforts when traveling upon its line of railway, the sleeping car company and the railroad company have no distinction so far as the passenger is concerned when he seeks redress against the railroad company for injury received through the negligence of the sleeping car company. But, because the railroad company may become liable for the negligence of the servants of the sleeping car company, it does not follow that the sleeping car company may not also be liable severally and jointly. The passenger not only has a contract of transportation with the railroad company, but he also has a contract with the sleeping car company. By these two contracts each company imposes on itself the same duty of protection to the person and property of the passenger, and each may be sued separately, or both may be sued jointly. Every duty that the sleeping car company owes a passenger is also a duty that the railroad company owes; but the duty of the railroad and sleeping car company may not be the same when the injury results from the negligent operation of the train, as this seems to be a duty peculiarly assumed by the railroad. It is manifest that the same duty rested on the sleeping car company to protect the person and baggage of Nelson as was imposed on the railroad company, and the converse of this proposition is true. Both the sleeping car company and the railroad company had separate contracts with the passenger; each receiving from him an independent consideration. The sleeping car company was both the agent of the railroad company and also engaged in its own enterprise, taking a valuable consideration therefor.

98 Mich.—20

While it is not alleged that this injury occurred in this state, it is not amiss to note that, by section 195 of the Constitution of 1890 of the state, sleeping car companies are made common carriers and liable as such. This simply shows that the laws of this state recognize that there may be an independent liability on the part of the sleeping car companies under their contract of carriage, as well as the agents of the railroad company. The negligence complained of was the loss of appellant's baggage. The negligent failure of both companies to perform their duty to appellant resulted in a single and indivisible injury, for which either or both are liable. In such case, as is stated in the case of *Walton, Witten & Graham* v. *Miller,* 109 Va. 210, 214, 63 S. E. 458, 460, 132 Am. St. Rep. 908, 911, these two companies are joint tortfeasors. As to when persons are joint tortfeasors, it is stated in that part of opinion to be found in the above-cited case, citing many authorities, that: " 'In respect to negligent injuries, there is considerable difference of opinion as to what constitutes joint liability. No comprehensive general rule can be formulated which will harmonize all the authorities. The authorities are, perhaps, not agreed beyond this: That where two or more owe to another a common duty, and by a common neglect of that duty such other person is injured, then there is a joint tort, with joint liability. The weight of authority will, we think, support the more general proposition that, when the negligence of two or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert of action.' 1 Cooley on Torts (3d Ed.), p. 246.' '

That the sleeping car company is liable for the loss of a passenger's personal baggage, if it fail to exercise proper care to guard same, is settled by many authorities. *Pullman Company* v. *Green,* 128 Ga. 142, 57 S. E. 233, 119 Am. St. Rep. 368. That the railroad company

is alike liable is equally well settled. See *Nashville & Chattanooga Ry. Co.* v. *Lillie,* 112 Tenn. 331, 78 S. W. 1055, 105 Am. St. Rep. 947. If both are liable, it follows that they are jointly and severally liable, and where the joint and several liability is conceded the controlling principles of law become easy of application. In the case of *Pullman Company* v. *Kelly,* 86 Miss. 87, 38 South. 317, this court held "that a sleeping car company owes to all passengers whom it receives all the obligations and duties which a common carrier owes to passengers, except, of course, that a sleeping car company, not controlling the motive power, and not having the management of the train of which its car is a part, cannot be held liable to its passengers for injuries occurring to them by reason of any defect or failure in the machinery which furnishes the motive power, or by reason of any want of care, miscarriage, or default in the management of the train;" but, because it is the agent of the railroad company, the latter company is also liable for every neglect that makes the sleeping car company liable. In Cooley on Torts (2d Ed.), p. 159, it is said that, where an injury is produced by joint tortfeasors, "the party injured may bring separate suits against the wrongdoers, and proceed to judgment in each, and that no bar arises as to any of them until satisfaction is received." In the same authority, on page 157, it is said: "Whatever may have been the reason for proceeding at first against less than the whole, it is conceded on all sides that a previous suit against one or more is no bar to a new suit against the others, even though the first suit be pending, or have proceeded to judgment, when the second is brought." Of course, where there is but one injury, there can be but one satisfaction for that injury; but until there is a satisfaction the injured party may bring as many separate suits for the injury as there are joint wrongdoers, and in the end elect to take the highest assessment of damage made by any judgment. Cooley on Torts (2d Ed.),

p. 159; *Marriott* v. *Williams,* 152 Cal. 705, 93 Pac. 875, 125 Am. St. Rep. 87; *French* v. *Boston Coal Co.,* 195 Mass. 334, 81 N. E. 265, 11 L. R. A. (N. S.) 993, 122 Am. St. Rep. 257; *Cleveland, etc. Ry. Co.* v. *Hilligoss,* 171 Ind. 417, 86 N. E. 485, 131 Am. St. Rep. 258.

· The suit by Nelson against the sleeping car company in the state of Tennessee, resulting in a judgment in favor of the sleeping car company, cannot be used as a bar to this suit against the railroad company. Judgments conclude only parties and privies, and there is no such privity between joint tortfeasors as would allow one to plead in bar to a suit against him a judgment acquitting another of responsibility for the same act. Each is liable independently of the other, and the utmost that any joint tortfeasor can ask is that there be but one satisfaction allowed for the same and indivisible cause of action, and this the law guarantees. That a judgment in favor of one joint wrongdoer is no bar to a separate action against another was settled in this state by the case of *Railroad Co.* v. *Clarke,* 85 Miss. 697, 38 South. 97. See also 24 Am. and Eng. Enc. Law (2nd Ed.), p. 765. In the *Clarke Case, supra,* this court said: ''The right of action which the appellee had was both joint and several, and each defendant was liable for the whole damage. . . . The appellee could have instituted suit for the entire amount of damage which he had suffered against either of the parties, or against both, as he chose to do. Had the verdict been against both, this would neither have lessened nor increased the liability of appellant for the entire judgment. Nor is the fact that the jury, no matter by what motive actuated, failed to find a verdict against appellant's codefendant in any wise prejudicial to the rights which may exist between appellant and its codefendant, growing out of the subject-matter of this suit.'' There may be cases in which a judgment in a suit in which an agent or servant is a party may be conclusive for or against the prin-

cipal; but we are only now interested in the pursuit of this question to an extent sufficient to say that, if there are such cases, this is not one of them.

*Reversed and remanded.*