WESTERN UNION TELEGRAPH CO. *v.* MEEK.

[75 South. 772—74 South, 788, In Banc.]

TELEGRAPH AND TELEPHONES. *Failure to transmit message. Statutes.*

Under Laws 1908, chapters 76-78, penalizing telegraph companies for failure to deliver a message after it has been received at the place of delivery; where a telegram was telephoned by an employee of the telegraph company at an intermediate office to the residence of the sendee, using a telephone company with which the telegraph company had no contract and received by one who promised to deliver it to the sendee and was not afterwards telegraphed to the telegraph office of sendee's place of residence, in such case the telegram was not in fact sent over the telegraph company's wires to the sendee's place of residence, and the company was not liable under the statute for failure of its office to produce the telegram on the demand of the sendee.

ON SUGGESTION OF ERROR.

For former opinion, see 74 So. 788.

*J. A. Sykes,* for appellant.

This is a suit to recover the twenty-five dollars, statutory penalty for the appellant's failure to deliver a message under Laws 1908, chapter 76, page 65, which reads as follows: "A telegraph or telephone company shall deliver all messages addressed to a person residing or having a place of business in any city, town, or village where it may have an office, or within one mile of its office; and if any telegraph or telephone company shall receive any message or matter for transmission, and shall fail, neglect or refuse, without good and sufficient reason, to transmit correctly or deliver the same within a reasonable time to the person addressed, such person, or the person injured, shall be entitled to recover of the company in default the sum of twenty-five dollars in addition to damages for any injury."

The court will see from the statement of facts and the record in this case that this message was never transmitted to Columbus, its destination. For this reason, the

statute does not apply, as this is a suit for the delivery penalty, not a delay transmission. The statutory penalty of fifteen dollars for a delayed transmission does not figure in this suit at all. (Laws 1908, ch. 78.).

In order for the delayed delivery penalty to be recovered, there must be a transmission to the office of the destination of the message—a completed transmission. A receipt of said message by said office of destination which in this case was the Western Union Office at Columbus, Mississippi; and a consequent failure to deliver the message within a reasonable time without good and sufficient reason to the sendee. In other words, a delivery of any kind, presupposes a complete transmission and receipt. Until a message is so transmitted and received, it is not in the attitude to be delivered, in fact it is an impossibility to make delivery, for there is nothing to deliver. And certainly if there is nothing to deliver then most assuredly, there is nothing to which a penalty for a delayed delivery could attach to.

The case of *Marshall v. Telegraph Company,* 79 Miss. 161, decides this point, where the court speaking through Judge WHITFIELD, says: ''We understand both cases to hold that it is competent for a state in the exercise of its police power, to enforce a reasonable penalty for a failure on the part of the company to deliver within a reasonable time without good excuse therefor from the office of the destination to the sendee, a telegram transmission being wholly over, and this the Alexander case (66 Miss. 161) holds.'' This case was expressly reaffirmed in *Telegraph Company v. Hall,* 79 Miss. 623.

These Marshall and Hall cases also hold that this delivery statute being penal must be strictly construed. In both of the above cases, the messages were promptly delivered after being received by the office of destination but were delayed in transmission.

Miss Peters of the appellant's office at Jackson, Mississippi, received this message from Memphis, Tennessee.

It was after office hours at Columbus, and that office was,· of course, closed; consequently, she called for Meek over the 'Phone, but was unable to get him. As narrated in the statement of fact, she read the message to Holesapple, who told her he would take the message for Meek. And thinking the message was delivered, it was never transmitted to Columbus, which fact is absolutely undisputed.

If it is therefore undisputed that the message was never transmitted to Columbus, then under the Marshall and Hall cases holding that the transmission must be wholly over, then certainly the penalty cannot be recovered in this case. If there is any penalty at all ·recoverable in this case, it is the penalty for a delayed transmission. This, however is not sued for.

Should it be argued in this case that a delayed transmission would cause a delayed delivery, the two penal statutes to say nothing of the Marshall and Hall cases would rob such a contention of its merits. The two statutes clearly show that it was the legislative intent to penalize two things: one a delayed delivery, the other a delayed transmission. The statutes are plain, and do not require the strict construction to which they are entitled. So therefore, if a plaintiff sues for one of these penalties, he must sue for the right one. He cannot recover the delayed transmission penalty for a delayed delivery, nor can he recover the delayed delivery penalty for a delayed transmission as in this case. It is therefore up to him to know how he has been wronged, if wronged he is, and having filed his declaration, he must stand by it.

We therefore submit that for the reason sent forth in this brief, the peremptory instruction allowing plaintiff to recover the statutory penalty for a delayed delivery was error, and that the case should be reversed and judgment entered here for appellant.

*W. C. Meek*, for appellee.

I have argued this case different from most case, in a practice now in Mississippi, at Columbus, Mississippi, of over thirty-seven years; on account of its being a case near my heart on account of the oppression of my nephew, and it being so gross, etc., I "filed" for him this suit and won. I ask the judgment be affirmed, for the presumption of law is, the lower court acted correctly and an affirmation should follow. There is absolutely no error at all in the case; no interstate commerce, and could not be on the facts and case honestly made here. On interstate Commerce, 162 U. S. 650, 663, 40 "L," page 1105. *Western Union Telegraph Co.* v. *James.*

COMMERCE: State law requiring prompt delivery of telegrams is valid police regulation even as to messages from other states. *James Case* in 162 U. S. Reports, pages 650, 653 and 663. Legislation of a state, aiding commerce is valid. Commerce: State imposition of a penalty for telegraph company's neglect of legal duty is not commerce regulation see same James case above, pages 650, 653, 654, etc., numerous other cases. This case of James, Your Honors, is my case here, on all-fours a suit for penalty and damages. Please see and read it. We rely on the James case fully as it is like our case, here. Case here should be affirmed and we are satisfied on an affirmation for the penalty of twenty-five dollars.

We ask in law an affirmation and cite James case, a Georgia case, for the penalty, Congress has not acted on Telegraph messages, etc. We will ask no further time as our case has to be affirmed, in law.

The James Case says: A state statute imposing a penalty for lack of due diligence in delivering a telegram is made in the reasonable exercise of the police power of

the state is not an unconstitutional interference, with interstate commerce as applied ever to interstate messages, in the absence of any legislation by Congress on the subject. *James Case,* 162 U. S. 40 "L" Ed., page 1105, same 162 U. S. pages 650, 663. This settles the case. This was not interstate; Tunica, Mississippi to Columbus, Mississippi, for a nondelivery. James case settles it. Congress never has acted on the subject here. I have all congressional acts, etc., and it has not done so. So we win an affirmation. Commerce. State law requiring delivery of telegrams, is valid police regulation, even as to messages from other states. See *James Case,* 162 U. S. page 653. Same approved, in 94 S. E. 429 and many other cases. Legislation which is a mere aid to commerce may be enacted by a state. Same James case above. Commerce states imposition of a penalty for Telegraph Companies neglect of legal duty is not commerce regulation. Same case as above, page 661. Same approved in 169 U. S. 634. Telegraphs right of receiver of message to collect statutory penalty for its delayed delivery is unaffected by senders contract. Same case; all in *James Case,* 162 U. S. pages 650 and 653. Same in Law. Lawyers Cooperative Edition, No. 40, page 1105, bottom of page. A state statute imposing a penalty for lack of due diligence in delivering a telegram is made in a reasonable exercise of the police power of the state, is not an unconstitutional interference with Interstate Commerce as applied to interstate messages, in the absence of any legislation by Congress on the subject. Here, cases at bar no interstate purely intrastate—inside of state, penalty, nondelivery in state, or messages sent in the state from Tunica, Mississippi, in the state to Columbus, Mississippi, in the state, hence; even if above recovery has to be had here of penalty and Congress has never regulated or passed any law on the subject and none can be shown, for there is none. See *James Case* above, 162 U. S. pages

650 and 654. Same Law, Ed., page 1105. An action for a penalty for delay in delivering (hence an utter failure to deliver at all; a non-delivery) a telegram is unaffected by any stipulation as to any liability, etc. Here a suit for the penalty, etc., for a failure to deliver at all, and not any concern at all as to transmission, how sent, etc. Here a failure to deliver. In the James case, it is said: Can it be said that the imposition of a penalty for the violation of a duty which the company (this same appellant here, too) owed by the general law of the land (state) is a regulation of or an obstruction to Interstate Commerce within the meaning of that clause of the Federal Constitution under discussion here. We think not. Although a message from another state (here, case at bar, same state) comes from a place outside of the state, it is yet under the jurisdiction of the state where it is to be delivered (after its arrival therein at the place of delivery). Case at bar here, no interstate at all. Tunica, Mississippi, to Columbus, Mississippi, and if sent around the world to reach these two inside intrastate towns in same state, no interstate in it. But if it was, and it was not as in James Case, Alabama to Georgia, the penalty was allowed by the U. S. supreme court and supreme court of Georgia (90 Georgia, page 258) and said no interstate even then, so defense of appellant of telephoning as it alleges in its legal plea, is of no effect and void. The peremptory instruction was proper. The jury would have given more than the penalty. Defendant appellant ought to be satisfied. See *Allen Case,* 66 Miss. 557; *McInnis* v. *N. O. & N. E. R. R.,* 68 So. 483. The *James Case* in 162 U. S. page 650, has settled the law in plaintiff's appellee's favor here, and its reasoning is correct and the judgment of the Lowndes county circuit court should be, and we believe will be, by this Honorable court here, affirmed.

Stevens, J., delivered the opinion of the court.

The judgment rendered by the lower court in this cause was affirmed on a former day of this term. On considera-tion of the suggestion of error, we are driven to the con-clusion that the case must be reversed, unless we over-rule prior decisions of our court. The facts, briefly stated, are as follows: On June 18, 1915, Sterner Meek, at Tunica, Miss., sent the following message:

"Seth A. Meek, Columbus, Miss.: Come to Tunica for week-end house party, if possible. Leave Columbus to-night, and come via Winona and Memphis. Wire an-swer.                                    Sterner.

"Do come. Miss Abbay."

The office of the Western Union Telegraph Company at Tunica was closed for the night at the time Mr. Meek desired to deliver the message to the telegraph company, so he delivered the message to the long-distance telephone operator for the Cumberland Telephone Company at Tunica, who phoned the message to the Western Union Telegraph Company at Memphis, and the telegraph company at Memphis, Tenn., accepted the message for transmission to Columbus, Miss. The message was transmitted by the Western Union Telegraph Company to Jackson, Miss., and received by the Jackson, Miss., office at eight forty-four p. m. the same night it was forwarded. The message was received at Jackson by Miss Peters, the night clerk, who, finding that Columbus, Miss., office was closed for the night, called Seth A. Meek, the sendee, over long-distance telephone at Columbus, Miss. Miss Peters was unable, it seems, to get Seth A. Meek at the other end of the line, but one Mr. Holesapple answered the long-distance call at Columbus and advised Miss Peters that he could take the message and deliver the same to Mr. Meek. Thereupon Miss Peters delivered Holesapple the written message over the telephone and marked the written message at Jackson as "Delivered."

It appears that Miss Peters considered the message delivered. Holesapple did not deliver the message to Seth A. Meek until the next morning, when he advised Mr. Meek that the Jackson, Miss., office had called him over the long-distance telephone the night before and had a message for him in reference to a house party. Mr. Meek then went to the local office of the Western Union Telegraph Company at Columbus, and asked for the message. The Columbus office thereupon advised Mr. Meek that they had not received a message and had no message to deliver. This action was thereafter instituted by Seth A. Meek for the recovery of one thousand dollars punitive damages and twenty-five dollars as the statutory penalty for failure to deliver the message within a reasonable time. On the trial of the case the court granted a peremptory instruction in favor of the defendant as to any punitive damages, but gave a peremptory charge in favor of the plaintiff as to the statutory penalty of twenty-five dollars. From the judgment awarding plaintiff the statutory penalty, the telegraph company prosecutes this appeal.

By reference to chapters 76 and 78, Laws of 1908, it will be seen that there are now two statutes imposing penalties on telegraph companies. Chapter 76 is as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi: A telegraph or telephone company shall deliver all messages adressed to a person residing or having a place of business in any city, town, or village where it may have an office, or within one mile of its office; and if any telegraph or telephone company shall receive any message or matter for transmission, and shall fail, neglect, or refuse, without good and sufficient reason, to transmit correctly or deliver the same within a reasonable time to the person addressed, such person, or the person injured, shall be entitled to recover of the company in default the sum of twenty-five dollars, in addition to damages for any injury."

"Sec. 2. That this act shall take effect and be in force from and after its passage."

"Approved March 20, 1908."

The manifest purpose of this statute is to penalize telegraph companies for failure to deliver a message after it has been received at the office of the sendee. The other statute (chapter 78) imposes a penalty of fifteen dollars for delayed transmission. Counsel for appellee in his reply to the suggestion of error admits that this suit is not "for a delay in transmission," but "for negligence and gross failure to deliver at all." It is elementary that a penal statute must be strictly construed. Bearing this in mind, we are confronted with a state of facts showing conclusively that the message in this case never did reach Columbus over the wires of the Western Union Telegraph Company. It is the contention of appellee that the message reached Columbus by telephone, and that therefore the statute against failure to deliver is violated. The fact is, however, that the message was transmitted over the wires of the Western Union Telegraph Company to Jackson, and there stopped so far as any transmission by telegraph is concerned. The effort of Miss Peters to phone the message was not in fact a sending of the message into Columbus over the wires of the Western Union. The parties in this case had no contract with the Cumberland Telephone Company whereby the message was to be sent from Jackson to Columbus by telephone, and the effort of the plaintiff in this case is not to hold the telephone company liable, but to recover from the telegraph company. There is a material difference in the system employed by telegraph and telephone companies. The well-known system employed by the telegraph company is to send the message to the office of the telegraph company where the sendee resides or is to be found, and the operatives there are charged with the duty of receiving the message, of writing it out, keeping a record of it, and of delivering to the sendee the written message itself. If

this system had been complied with in the instant case, the Columbus office would have received this message, made a record thereof, and been in position to deliver Mr. Meek a copy. By this system there is private and confidential communication between sender and sendee, and by this system there is manual delivery of the written message to the sendee personally.

One statute penalizes a delay in transmission, and another statute, the one here invoked, is designed to penalize the telegraph company for delays incurred at the office of delivery, after the message has been correctly transmitted to the place of delivery. The statute relied on here strikes at the negligence of the operatives at office of delivery. So we have a case where admittedly the Columbus office of the Western Union never in fact received a message which could there be delivered. There is no liability whatever for the twenty-five dollar penalty. Disposition of this appeal is controlled by the cases of *Marshall* v. *Telegraph Co.*, 79 Miss. 160, 27 So. 614, 89 Am. St. Rep. 585; *Telegraph Co.* v. *Hall*, 79 Miss. 623, 31 So. 202, and *Telegraph Co.* v. *Ross*, 111 Miss. 649, 71 So. 904.

The suggestion of error will be sustained, the judgment of the learned circuit court reversed, and judgment entered here in favor of appellant.

*Reversed, and judgment here.*

SYKES, J., being of counsel in the trial court, took no part in this decision.

ETHRIDGE, J., (dissenting). I am unable to concur in the conclusion reached by the majority in this case, for the plain and simple reason that I think this record shows that the message was sent to Columbus, Miss., by an agency of the Western Union Telegraph Company regularly used in its business, and was received by a person selected by the Western Union Telegraph Company to receive said message for it. It appears in the record that

the message was originally tendered to the agent of the Cumberland Telegraph Company at Tunica, Miss., and phoned to the Memphis office of the Western Union Telegraph Company under and by virtue of a regular understanding and arrangement between the Western Union Telegraph Company and the Cumberland Telegraph Company. This is testified to by Mrs. J. O. Morrow, a witness for the defendant Western Union Telegraph Company, and who collected the fees for the transmission of such message according to the usual arrangement in the course of business between the two companies. The Memphis office telegraphed the message in question to the Jackson, Miss., office, and it was received at the Jackson, Miss., office at eight forty-four p. m. by Miss Eileen Peters, night clerk of the Western Union Telegraph Company, at Jackson, Miss. She testified, identifying the message in suit, and to the fact that it was received at eight forty-four p. m. I quote from her testimony as follows:

"Q. From what office was it transmitted to Jackson? A. From Memphis. Q. What did you do with the message after you received it? A. I put a call in for Columbus at eight forty-six. Q. How did you put a call in? A. By long-distance telephone. Q. And you asked for what? A. I called for Mr. Seth A. Meek at Columbus. Q. Who did you get? A. I didn't get Mr. Meek. I got Mr. Holesapple. Q. Did you or not at that time have a conversation with Mr. Holesapple? A. I did, yes. Q. Please state what that conversation was. A. He told me that Mr. Meek worked for him, or with him, and I understood him to say that he roomed with him, and he said that Mr. Meek was out, and he didn't know what time he would be back, and he said he could take the message, and I gave it to him that night; he asked to take the message himself. Q. Please state what you did then. A. I gave the message to him just as I had received it. Q. What time did you give the message to him? A. Nine o'clock.

Q. I will ask you, Miss Peters, why did you telephone this message from Jackson, Miss., to Columbus, Miss.? A. Because the Western Union in Columbus was closed at that time, and that is the way we handled all these messages at night. . . . Q. State whether or not your office made any further or other attempt to deliver the message after you phoned it. A. No, sir; we considered it delivered then. . . . Q. Why didn't you make any other effort to deliver the message? A. Because we considered it delivered, and they are never sent over wires when they are phoned; that is the customary way to deliver messages at night. Q. But why did you try to deliver it that night; why didn't you wait until the next morning? A. Because it was a straight day message and should be delivered at once.''

On cross-examination this witness was asked the following questions and gave the following answers:

''Q. Isn't it the custom of the Western Union Telegraph Company to receive all messages handled in writing and then telegraph that message with a telegraph instrument to the next operator, and then in turn that operator takes it down in writing, and then folds it up and puts it in an envelope and delivers it to a messenger boy, to be delivered only personally to the person addressed, or, if he can't deliver it to the particular person addressed, then to leave a written notice at his place of residence or place of business? A. That is the custom when the office is open. . . . Q. Then the Western Union Telegraph Company didn't send this message as the laws require them to do it, did they? A. No, sir; I suppose not; I don't know about the way the law requires it to be done; I am governed by the rules of the company. . . . Q. I believe I understood you to say that you did not deliver this message to Meek or his authorized agent? A. No, sir; I did not. Q. But you delivered it to one Mr. Holesapple, whom you say told you that he roomed with Mr. Meek, and that he would deliver the message that

night. A. Yes, sir; he asked to deliver it, and said he would do it that night."

On redirect examination this witness testified as follows:

"Q. Counsel has asked you about the usual and ordinary way to send telegraphic messages, and you replied that you sent this message in the usual and ordinary way, and that the way he described was the usual and ordinary way when the office was open. What do you mean by that? A. I just meant that the Columbus office was closed at night, and that it was impossible to make a delivery over the wire, and that it was the usual and customary way to phone the regular straight day message when the office was closed. Q. I will ask you to state whether or not you have ever delivered a message or messages over the telephone as well as by messenger boy. A. Yes, sir; we deliver over half of them by telephone. Q. You deliver over one-half of your messages by telephone, instead of by messenger boy; then you do deliver over the phone as well as by messenger boy? A. Yes, sir, . . . Q. Please state how Mr. Holesapple—please state how you understood Mr. Holesapple was taking this message when you delivered it to him. A. He took it as a friend, and he told me that Mr. Meek was out. Q. Did you understand that he was taking it down in writing? A. No, sir; I didn't know; I didn't understand how he was taking it, but he repeated it after me, and said that he would deliver it that night; then I considered it delivered."

Mr. Meek testified Mr. Holesapple was not authorized to receive this message for him, and that he never in fact delivered the message, and that on the following morning he called at the Western Union Telegraph Company for the message, and the company promised to get it and deliver it, but never did so. It appears conclusively from the above quotation from the record that the message was actually delivered to Columbus over an instrumentality regularly used by the Western Union Telegraph Com-

pany in delivering its messages to its customers.   Witness introduced by the Western Union Telegraph Company testified that Mr. Holesapple repeated the message to her as she delivered it to him, and that she sent the message to Columbus just like it was received in Jackson.   It is difficult for me to understand how it would be material whether the message was sent over the wire by means of a combination of dots and dashes, or whether it was sent over the wire by an electric current and the vibrations of the human voice, so long as the message actually was sent to Columbus.   It appears from the testimony of the Western Union Company itself that it was using the wires of the Cumberland Telegraph Company, in all cases where its offices were closed at night, for the purpose of delivering the messages to its customers.   The wires of the Cumberland Telephone & Telegraph Company, for the purpose of delivering the message, were the wires of the Western Union Telegraph Company.   This appears in this record and beyond dispute, and it further appears that more than one-half of the messages are delivered by phone rather than by messenger.   In addition to this it is well known that this particular company used the telephone system and wires as a part of its telegraph system, and that it filed its contract of plans and arrangements with the Railroad Commission, and received permission from the Railroad Commission to make this arrangement, with the provisos and understanding that the charges would not exceed the regular message rates of the telegraph company.   See 14th Biennial Report Mississippi Railroad Commission, p. 78.

The construction of the duties and liabilities of the company under the act quoted in the majority opinion enables the telegraph company to escape responsibility for its negligence in the conduct of its business, when there is nothing in the message to show that there was any exemption from liability written on the message,

making the Cumberland Telegraph Company merely an agent of the sender, as is often the case in telegraph messages. The contract here was a straight and simple contract to deliver the message. The message actually went to Columbus, Miss., but was never delivered to the sendee, though he lived in Columbus, Miss., and called on the company for the message after being advised that such message had come to Columbus. In *Nelson* v. *Illinois Central R. R. Co.*, 96 Miss. 295, 53 So. 619, 31 L. R. A. (N. S.) 689, it was held that the railroad company was liable for the negligence of the employees of a sleeping car company, where the sleeping car was attached to and pulled by the train of the railroad company. Numerous other cases supporting this principle could be cited, but the principle is clear that a party cannot use an instrumentality in its business and escape responsibility for the negligence resulting therefrom.